

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RJN
F.#2009R01167

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

March 6, 2012

**BY HAND AND ECF**

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:  United States v. Anthony Cutaia
>      Criminal Docket No. 10-0010 (S-5) (ENV)

Dear Judge Vitaliano:

The government respectfully submits this letter in advance of the defendant's sentencing, scheduled for March 8, 2012 and in response to the defendant's March 5, 2012 sentencing submission ("Def. Let.").

I.   Background

On January 20, 2011, Anthony Cutaia ("A. Cutaia") pled guilty pursuant to a plea agreement ("Plea Agreement") to Count Twenty-Seven of a superseding indictment.  Count Twenty-Seven charges the defendant with Hobbs Act Robbery Conspiracy in violation of 18 U.S.C. § 1951(a).

The charges stemmed from an investigation into the activities of members and associates of La Cosa Nostra, and in particular, into multiple robberies committed over several years by members and associates of the Luchese organized crime family of La Cosa Nostra ("Luchese crime family").

As set forth in the Probation Department's Presentence Report ("PSR"), in November 2011, A. Cutaia was involved in the attempted armed robbery of John Doe #5, an owner of an electronics and appliance store in Brooklyn, New York.  In approximately October 2009, Salvatore Cutaia ("S. Cutaia"), A. Cutaia's father and co-defendant, directed Joseph Cutaia ("J. Cutaia"), A. Cutaia's brother and another co-defendant, to rob John Doe #5.  S. Cutaia believed that John Doe #5 stored a substantial sum of the proceeds from his electronic store business in his home in Brooklyn, New York.  PSR ¶ 65.  Several

years earlier, in 2004, S. Cutaia had directed J. Cutaia to rob the same individual. Although J. Cutaia and his coconspirators stole approximately $400,000 in 2004, S. Cutaia was not satisfied because he believed the victim had more cash hidden in the home. PSR ¶¶ 62-65.

J. Cutaia enlisted A. Cutaia's assistance in carrying out the second robbery. On November 11, 2009, J. Cutaia, A. Cutaia and their coconspirators, including CW1 and CW2 attempted the robbery. They used two vans rented by another coconspirator ("CW3") and followed the victim home from his business. When the victim turned onto his block, A. Cutaia parked one of the vans in front of the victim's car and J. Cutaia parked the other van behind the victim's car to block him from proceeding. CW1 and CW2 broke the windows of the victim's car and tried to force him into the back seat. They threatened him with guns and intended to overtake his car, drive it to his home where they planned to restrain him with zipties, and demand that he inform them of the location where he stored the proceeds of his business. J. Cutaia was concerned that John Doe #5 might recognize him as he entered the home. Therefore, J. Cutaia instructed CW1 and CW2 to restrain John Doe #5 in his garage to ensure that John Doe #5 was not able to see J. Cutaia as he entered the house to commit the robbery. However, the victim managed to escape from the car. As he did so, CW2 fired gun shots, but did not hit anyone. A. Cutaia and the others then fled the scene. Later that night, J. Cutaia instructed CW3 to report to the police that one of the vans had been stolen. PSR ¶¶ 65-68.

II. Presentence Report

According to the PSR, the defendant's total offense level is 26 and his criminal history category is III, for a range of imprisonment under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 78 to 97 months. PSR ¶¶ 153, 160, 192.

The calculation of the defendant's base offense in the PSR differs from the Guidelines calculation set forth in the Plea Agreement for two reasons. First, the PSR applies a criminal history of III, whereas the Plea Agreement estimated that a criminal history category of II would apply. Second, the PSR includes a seven point enhancement for discharge of a firearm, pursuant to U.S.S.G. § 2B3.1(b)(2)(A), PSR ¶ 146.

A.  Criminal History

The government agrees with the Probation Department's determination that the defendant's criminal history category is III. However, because of the parties' good faith mistake in estimating that the defendant's criminal history category would be II, the government is constrained by the Plea Agreement and takes no position on whether the Court should apply criminal history category II, as estimated in the Plea Agreement, or criminal history category III, as set forth in the PSR.[1]

However, the defendant was specifically advised, in the Plea Agreement and during the guilty plea proceeding, that the calculation of his criminal history and offense level is only an estimate and not binding on the government or the Court. See Plea Ag. ¶¶ 3,5; United States v. Habbas, 527 F.3d 266, 272 n.1 (2d Cir. 2008) ("furnishing of a guidelines estimate will not bar the government from making good-faith changes to its position, even as to information already in its possession, if, for instance, further study shows the applicability of guideline provisions not considered in making the estimate" provided the agreement reserves that prerogative to government).

B.  Guidelines Calculation

The government agrees that the enhancement for the discharge of the firearm has factual support because A. Cutaia, as a knowing and willing participant in the robbery, is responsible for the conduct of his coconspirators. However, this enhancement was not included in the Plea Agreement because the parties agreed that its applicability to this defendant, as compared to his coconspirators in the robbery of John Doe #5, was a close question. Therefore, in accordance with its obligations set forth in the Plea Agreement, the government does not seek to apply this enhancement at sentencing. See United States v. Vaval, 404 F.3d 144, 152-54 (2d Cir. 2005).[2]

---

[1] Although the defendant objects to the inclusion of his conviction for the sale of illegal fireworks in his criminal history computation (Def. Let. at 2; PSR ¶ 158), that conviction is not the cause of the parties' good faith mistake in their estimate of the defendant's criminal history. Rather, the defendant's conviction in 2004 for attempted assault in the third degree does not appear on the defendant's criminal history report (PSR ¶ 156), most likely because he was adjudicated as a youthful offender.

[2] If the Court applies a criminal history category of III, rather than II, the corresponding Guidelines range based on

3

III. Sentencing

The defendant argues that the Court should consider that this offense is his first felony conviction and that he became involved at the last minute as a driver. Def. Let. at 2. However, this description of the defendant's role in the offense is incomplete. A. Cutaia participated in the planning of the robbery, followed the victim home from his store and helped his coconspirators flee the scene. Moreover, the government respectfully submits that his role in this offense is not just an aberration from an otherwise law-abiding life. Rather, although this is the defendant's first felony conviction, he has four prior criminal convictions, including one for attempted assault and one for criminal possession of a controlled substance. PSR ¶¶ 156, 159. Furthermore, when he was arrested for selling illegal fireworks, he was carrying a switchblade knife. PSR ¶ 158.

IV. Conclusion

For the reasons set forth above and in accordance with the factors set forth in 18 U.S.C. § 3553(a), the government respectfully submits that a sentence within the Guidelines range of 33 to 41 months' imprisonment, as estimated in the Plea Agreement, is appropriate to reflect the seriousness of his offense and to deter the defendant and others from engaging in similar crimes in the future. However, consistent with the terms of the Plea Agreement, the government takes no position on where within the applicable Guidelines range the defendant's sentence should fall.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: \_\_\_\_\_/s/\_\_\_\_\_
Rachel J. Nash
Assistant U.S. Attorney
(718) 254-6072

cc: Scott Leemon, Esq., Via ECF
    Steven Guttman, U.S. Probation, Via ECF

---

the total offense level of 19 as calculated in the Plea Agreement is 37 to 46 months.